IN THE UNITED STATES COURT OF FEDERAL CLAIMS
- Bid Protest -

THIS DOCUMENT FILED ELECTRONICALLY

LINCOLN GROUP, LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 06-CV-672

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EMERGENCY, PRELIMINARY AND PERMANENT RELIEF AND FOR EXPEDITED TREATMENT

Plaintiff Lincoln Group, LLC ("Lincoln"), by undersigned counsel, respectfully asks this Court for emergency relief. The Department of Defense, through its Joint Contracting Command - Iraq/Afghanistan ("JCC-I/A"), has disregarded the requirements of the Competition in Contracting Act ("CICA") and of the Federal Acquisition Regulation, by improperly and unlawfully overriding the automatic stay of performance imposed by statute and regulation upon commencement of performance for its Iraqi Advisory Task Force ("IQATF") contract. The stay of performance was required by law and regulation after Lincoln filed a post-award protest with the agency challenging award of the contract.

Lincoln's protest remains pending before JCC-I/A. Although CICA and the FAR permit the agency to proceed with performance (to "override the stay") upon a written finding by the appropriate official, here JCC-I/A has refused to disclose whether any written determinations complying with law and regulation exist. Upon information

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

and belief, none exist, or alternatively, any written determinations that may exist fail to comply with requirements established by this Court, and are thus invalid and insufficient to save from illegality JCC-I/A's purported override of suspension.

Therefore, Lincoln asks that this Court declare unlawful the action of JCC-I/A in overriding suspension of performance of the IQATF contract, and thereby prevent awardee from commencing performance prior to the time JCC-I/A resolves Lincoln's protest currently pending before it.

## Factual Background

Plaintiff Lincoln is a Maryland limited liability company whose headquarters office is located in Washington, D.C. Lincoln is engaged in the business of providing strategic communications and public relations services, particularly in challenging and hostile environments, and principally under contract to agencies of the United States and foreign Governments. Complaint ¶ 4; Declaration of William Edgar Morris (Exhibit 1 to this Memorandum) ¶ 2.

JCC-I/A issued solicitation W91GER-06-R-0034 (the "Solicitation") on August 12, 2006. The Solicitation sought to procure professional public opinion survey, research and analysis services in the Republic of Iraq. The Solicitation states that under the resulting contract, the Government is to place task orders for monthly services to be rendered over a two-year period. The maximum value of all task orders was stated as $250 million. The Contracting Officer for this procurement was Maj. Manuel F. Saenz, USAF. The Solicitation represents a new award to continue the provision of services to the military currently being performed under a predecessor contract by SyColeman Corporation. Complaint ¶¶ 7-8; Morris Decl. (Exh. 1) ¶ 3.

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

After amendments, proposals were due on August 26, 2006, Baghdad time. Lincoln timely submitted a proposal in response to the Solicitation. Lincoln was informed that it was not the successful offeror, and received a written debriefing by letter from the Contracting Officer dated September 8, 2006 (the "Debriefing Letter"), which was received by Lincoln on September 9. The letter stated that award was made to SOS International, Ltd. ("SOSI"). Complaint ¶¶ 9-10; Morris Decl. (Exh. 1) ¶ 4.

The Debriefing Letter stated that Lincoln's proposal had been excluded for consideration from award, for reasons that are not material for purposes of this suit, but that Lincoln believes are erroneous and do not comply with law and regulation. However, the Debriefing Letter revealed that Lincoln's proposal was likely materially more advantageous to the Government, had it been properly evaluated. Therefore, Lincoln filed an agency protest against award to SOSI, pursuant to FAR § 33.103, with the Contracting Officer on September 14, 2006, Eastern Time, which was September 15, 2006, Baghdad time. Complaint ¶¶ 11-12; Morris Decl. (Exh. 1) ¶ 5. A redacted copy of Lincoln's protest, from which all confidential information has been deleted, is appended to this Memo as Exhibit 2.

The merits of Lincoln's contentions that JCC-I/A violated law and regulation by excluding Lincoln's proposal are pending before the agency, and are not at issue in this action. However, Lincoln's protest demanded suspension of performance, pending resolution of the protest. Upon information and belief, JCC-I/A made award to SOSI on September 8, 2006. Therefore, Lincoln filed its protest within ten days of award. Accordingly, the Contracting Officer was required to suspend performance pursuant to CICA, 31 U.S.C. § 3553(d), and/or FAR § 33.103(f)(3). The Contracting

PALEY, ROTHMAN,
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

Officer furnished acknowledgment of receipt of Lincoln's protest, a copy of which is appended as Exhibit A to the Complaint. Although the Contracting Officer's mention of suspension is somewhat unclear, upon information and belief JCC-I/A did suspend performance by SOSI on or about September 15. Complaint ¶¶ 13-15; Morris Decl. (Exh. 1) ¶ 6.

Upon information and belief, the contract awarded to SOSI calls for full performance to commence on or shortly after October 1, 2006. Upon information and belief, the incumbent contractor on the predecessor contract to the IQATF award at issue in this case, SyColeman Corp., stands ready and able to continue performance until JCC-I/A rules upon Lincoln's protest, and its contract contains the clause at FAR § 52.217-8 authorizing JCC-I/A to order continuation of services from SyColeman Corp., for up to six months. Complaint ¶¶ 16-17; Morris Decl. (Exh. 1) ¶ 7.

The statute and regulation permit the agency to proceed with performance (to "override the stay"), but only if "continued performance is justified, in writing, for urgent and compelling reasons or is determined, in writing, to be in the best interest of the Government. Such justification or determination shall be approved at a level above the contracting officer, or by another official pursuant to agency procedures." FAR § 33.103(f)(3).

On September 20, 2006, the Contracting Officer issued the "Notice of Continued Performance," attached as Exhibit B to the Complaint, informing Lincoln that JCC-I/A was overriding the suspension, pursuant to FAR § 33.103(f)(3).

Lincoln has repeatedly requested the written determinations, if any, supporting the Government's conclusion that "urgent and compelling reasons" exist, or

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

that the "best interest of the Government" justifies continued performance. JCC-I/A has refused to disclose such determinations, if any exist, but has advised Lincoln that it should request copies of them under the Freedom of Information Act. *See* Exhibit 3 to this Memo. Upon information and belief, no such written determinations exist, or alternatively, any written determinations that may exist do not comply with law and regulation, and are legally insufficient to justify continued performance.

Unless JCC-I/A suspends performance by awardee SOSI pending resolution of Lincoln's agency protest, Lincoln will be harmed because, *inter alia,* JCC-I/A will be less willing to sustain its protest and/or order relief that would lead to award to Lincoln, so that Lincoln would become less likely to win award. Complaint ¶ 22; Morris Decl. (Exh. 1) ¶ 8.

## Argument

### This Court has jurisdiction over this action.

This Court has jurisdiction to hear a contractor's challenge to an agency's override of the statutory stay imposed by CICA. *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999). Its authority arises under its Tucker Act jurisdiction to hear cases involving an "alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1); *see RAMCOR, supra*, 185 F.3d at 1289.

PALEY, ROTHMAN,
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

CICA applies to an agency protest, but even if it does not, FAR § 33.103(f) prescribes virtually identical controlling law.

CICA provides the statutory framework for this action. When a protest is filed within the time periods prescribed by § 3553(d)(4), *i.e.*, within ten days after award or five days after debriefing, the agency is required to suspend performance.

CICA defines "protest" broadly, so as to include agency protests:

> In this subchapter:
> (1) The term "protest" *means a written objection by an interested party* to any of the following:
> (A) A solicitation or other request by a Federal agency for offers for a contract for the procurement of property or services.
> (B) The cancellation of such a solicitation or other request.
> (C) An award or proposed award of such a contract.
> (D) A termination or cancellation of an award of such a contract, . . . .
> (2) The term "interested party", with respect to a contract or a solicitation or other request for offers described in paragraph (1), means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.

31 U.S.C. § 3551 (emphasis supplied). Lincoln is an interested party, because it submitted an offer and because its direct economic interest will be affected by failure to win award.

Although much of § 3553 seems to contemplate protests before the Comptroller General, since the definition of "protest" in § 3551 does not require filing before the Comptroller General, the definition of "protest" comprehends Lincoln's agency protest. *See also* § 3553(d)(3)(A) (suspension required when federal agency "receives notice of a protest").

To be sure, other passages in § 3553 contemplate protests before the Comptroller General, such as the override provision:

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER CHARTERED
Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

> (C) The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section) –
>
> (i) upon a written finding that –
>
> (I) performance of the contract is in the best interests of the United States; or
>
> (II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and
>
> (ii) after the Comptroller General is notified of that finding.

31 U.S.C. § 3553(d)(3)(C). These provisions may be difficult to apply to an agency protest, even though an agency protester, if dissatisfied with the agency's disposition of the protest, can subsequently file a protest at the GAO. *E.g.*, 4 C.F.R. § 21.2(a)(3) (protest to GAO is timely if filed within ten days of adverse action on agency protest).

However, this Court need not finally decide whether CICA applies to the instant situation, because the FAR imposes substantially the same legal regime. That section provides that, after a timely agency protest:

> the contracting officer shall immediately suspend performance, pending resolution of the protest within the agency, . . . unless continued performance is justified, in writing, for urgent and compelling reasons or is determined, in writing, to be in the best interest of the Government. Such justification or determination shall be approved at a level above the contracting officer, or by another official pursuant to agency procedures.

FAR § 33.103(f)(3). Under the FAR, therefore, to override suspension the agency must make the same findings as under CICA: it must determine that continued performance is in the "best interest" of the United States, or that "urgent and compelling" circumstances require continued performance. It is axiomatic that the FAR has the force of law, and cannot be disregarded by the agency.

Because the FAR provision uses the same terms as CICA, this Court should interpret FAR § 33.103(f)(3) *in pari materia* with CICA. Therefore, in this action this

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

Court should apply precedent developed at this Court when ruling upon challenges to overrides of suspension after protests to the Comptroller General.

**The standard of review for challenges to agency override determinations is the APA standard.**

In reviewing challenges to the validity of agency determinations overriding CICA's automatic stay, this Court applies the standard prescribed by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). To succeed, a plaintiff must show the agency decision to be "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law." *See, e.g.*, 28 U.S.C. 1491(b)(4); *RAMCOR, supra*, 185 F.3d at 1290; *PGBA, LLC v. United States*, 57 Fed.Cl. 655, 657 (2003).

Otherwise stated, this Court may overturn the agency's decision if plaintiff demonstrates that the procurement official's decision lacked a rational basis, or that the procurement procedure involved a violation of regulation or procedure. *E.g., Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *SDS Int'l, Inc. v. United States*, 55 Fed.Cl. 363, 365 (2003).

Turning to the merits here, it is apparent that Lincoln will meet this standard.

**This Court should hold that because the agency did not provide its written rationale for the override to protester, its action is invalid for that reason alone.**

Despite two requests, *see* Exhibit 3 to this Memo, the Government has not furnished anything more than a bare assertion of its conclusion that continued performance is in the "best interest" of the United States, and that "urgent and

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER
CHARTERED
Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

compelling" circumstances require continued performance. This Court should hold that a secret rationale is no rationale at all, and that the override is invalid for that reason alone.

A decision that lacks a reasoned basis in an administrative record would be, by definition, arbitrary and capricious. This Court's precedent requires the Government to provide its detailed rationale, so that this Court may review, *inter alia,* "whether the factors relied upon by the contracting official were relevant or, conversely, whether factors relevant to the determination were ignored." *E.g., PGBA, supra,* 57 Fed.Cl. at 659, citing *RAMCOR, supra.* Indeed, if the Government needed only to assert the conclusion, without stating any supporting rationale, then agencies could and would override every suspension, negating the Congressional purpose in enacting CICA, which also finds expression in the companion FAR provision. In the absence of a written, detailed statement of the agency's reason for proceeding, the override cannot be sustained.

Moreover, holding the override is invalid because it was not communicated to protester would serve a valuable prophylactic purpose. Conceivably, in some cases, the Government's rationale might persuade a protester of its correctness, and eliminate the need for further litigation. Here, Lincoln has had no choice but to resort to litigation simply to learn the Government's position. Holding that an override not communicated to protester is *per se* invalid will deter the Government from relying upon this strategy in future procurements.

PALEY, ROTHMAN,
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

Any override determination, or approval thereof, dated after September 20, 2006 must be disregarded.

In all likelihood, the agency did not provide Lincoln its written determination of its reasons for the override, because none existed as of September 20. Settled law at this Court holds that the Government should not be allowed to supplement its support for an override decision with a document generated after the fact.

This Court has stated that:

> Because we test the decision under the arbitrary and capriciousstandard, our review should be necessarily confined to the administrative record already in existence, not some new record made initially in the reviewing court. . . . [I]n the narrow context of statutory compliance with the automatic stay provisions of CICA, it is unnecessary to search beyond the four corners of the override decision - the agency either complied with the requirements of Section 3553(d)(3) of CICA, or it did not.
>
> * * *
>
> We have been supplied no authority for the proposition that the override determination can be an evolving document. . . . The text of the statute does not support a reading that the override can precede the statutory justification.

*Advanced Systems Development, Inc. v. United States*, 72 Fed.Cl. 25, 33 (2006) (hereinafter *ASD*) (internal quotation and citations omitted). Nor, for that matter, does the text of the FAR provisions support such a reading. Therefore, if the agency produces any documents dated after September 20, this Court's precedent requires disregarding them altogether.

Furthermore, FAR § 33.103(f) requires that "[s]uch justification or determination shall be approved at a level above the contracting officer, or by another official pursuant to agency procedures." For the same reasons, any such approval must

PALEY, ROTHMAN,
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

have taken place, in writing, prior to the override. If approval took place afterwards, this Court should hold the override invalid for that reason alone.

**Assuming *arguendo* that a written justification existed in the Government's files prior to the override, it cannot be valid under this Court's precedent.**

Because Lincoln is not privy to any written justification, it is somewhat difficult to assess its possible merit. However, assuming *arguendo* that a written justification existed in the Government's files prior to the override, it is most unlikely to be valid under this Court's precedent. Because incumbent contractor SYColeman Corp. stands ready to continue performance, there cannot be any "urgent and compelling services" justifying performance by awardee SOSI. *E.g., Keeton Corrrections, Inc. v. United States,* 59 Fed.Cl. 753 (2004) (urgent and compelling circumstances did not exist when incumbent contractor could continue to provide services under monthly purchase orders while protest pending); *Altos Federal Group, Inc. v. United States,* 60 Fed.Cl. 832 (2004) ("best interest" override was invalid when agency had continued to procure services from protester/incumbent after expiration of previous contract). Here, no vital services will go unperformed during the twenty or so days until JCC-I/A must, by regulation, decide Lincoln's protest.

Similarly, it is difficult to imagine how the "best interest" of the United States requires performance by awardee. It is certainly possible that awardee's contract price is lower than that of incumbent SYColeman, and/or that its services are more desired by JCC-I/A. However, settled law holds that the mere fact that the new contract will be cheaper and better than the old one is insufficient to justify an override:

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

> In other words, the new contract is cheaper and better than the old contract. The allegation that the new contract is better than the old one in terms of cost or performance is not enough to justify a best interests determination. *PGBA*, 57 Fed.Cl. at 662. Indeed, it will almost always be the expectation that the new contract will be an improvement over the old. *Id.* at 663. To allow a best interests determination to rest on such a common ground would permit the override exception to swallow the Congressionally mandated rule that stays be automatic. *Id.*; [additional citation omitted].

*ASD, supra,* 72 Fed.Cl. at 31. Given that the incumbent contractor stands ready to continue performance, on the facts of this case it is difficult to see how the "best interest" of the United States requires performance by awardee for approximately twenty days.

Nor should invocations of national security function as talismans dispelling judicial scrutiny. "While the Court certainly must give serious consideration to national defense concerns and arguably should err on the side of caution when such vital interests are at stake, allegations involving national security must be evaluated with the same analytical rigor as other allegations of potential harm to parties or to the public." *E.g., Gentex Corp. v. United States,* 58 Fed.Cl. 634, 655 (2003) (citations omitted).

**Declaratory relief is the preferred and complete remedy, and plaintiff need not prove entitlement to an injunction.**

This Court's case law establishes that a declaratory judgment affords complete relief in a suspension override case, and that a plaintiff need not prove the rigorous requirements for an injunction. "Because the declaratory judgment will reinstate the stay and vacate the override, having the same effect as an injunction, the Court does not reach the issue of injunctive relief." *E.g., CIGNA Government Servs,*

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

*LLC v. United States*, 70 Fed.Cl. 100, 114 (2006); *accord, ASD, supra*, 72 Fed.Cl. at 36.

A previous case explains the rationale for this result more fully:

> If, as here, the agency override determination is, after application of the review standard prescribed by 28 U.S.C. § 1491(b)(4), determined to lack validity, declaratory relief so ruling serves to reinstate the statutory stay of contract performance, during the GAO protest period automatically provided under 31 U.S.C. § 3553(d)(3)(A). Congress did not require any evaluation of injunctive relief factors as a prerequisite to a stay of contract performance upon the filing of a protest with the GAO. Thus, it would be contrary to the legislative scheme to impose such an additional requirement, upon finding that an agency override determination lack[s] validity, in order to reinstate the statutory stay applicable during the GAO protest period. Declaratory relief preserves the scheme that Congress enacted.

*Chapman Law Firm Co. v. United States*, 65 Fed.Cl. 422, 424 (2005), cited with approval in *ASD, supra*, 72 Fed.Cl. at 36.

Nevertheless, although Lincoln need not show irreparable harm, here denial of relief will irreparably harm Lincoln. "This court has acknowledged that a lost opportunity to compete may constitute an irreparable harm. . . . * * * Congress enacted the automatic stay on the premise that the failure of an agency to stay performance could result in a competitive disadvantage that might not be remedied, causing a contractor to lose an important business opportunity." *E.g., PGBA, supra,* 57 Fed.Cl. at 664 (citations omitted); *accord, Spherix, Inc. v. UnitedStates,* 62 Fed.Cl. 497, 506 (2004); *see* Morris Decl. (Exh. 1) at ¶ 8.

**Because the time period for relief is so short, this Court should afford permanent <u>relief.</u>**

Finally, since the relief Lincoln seeks in this action would last no longer than when JCC-I/A issues its decision on the bid protest, which FAR § 33.103(g)

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

requires to occur no later than 35 days from September 15, 2006, *i.e.*, by October 20, 2006, Lincoln respectfully requests that this Court hold only one consolidated hearing on emergency, preliminary and permanent relief, and that Lincoln's motion be heard on an emergency basis, as soon as possible during the week of September 25.

WHEREFORE, Plaintiff Lincoln respectfully requests that the Court grant Lincoln the relief requested in the proposed order, and that proceedings be expedited. An appropriate form of order is appended to the motion.

Respectfully submitted,

LINCOLN GROUP, LLC

By: Daniel S. Koch

Daniel S. Koch
Member, Bar of this Court
PALEY, ROTHMAN, GOLDSTEIN,
ROSENBERG EIG & COOPER,
Chartered
4800 Hampden Lane, Seventh Floor
Bethesda, Maryland 20814
Tel: (301) 656-7603
Fax: (301) 654-7354

Dated: September 26, 2006

Counsel for Lincoln Group, LLC

Exhibits 1-3

PALEY, ROTHMAN,
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354